**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) RAMINTA WILSON, individually, on behalf of the Saint Francis Health System, Inc. 401(K) Savings Plan, and on behalf of all similarly situated participants and beneficiaries of the plan,<br><br>      Plaintiff,<br><br>vs.<br><br>(2) SAINT FRANCIS HEALTH SYSTEM, INC. and (3) SAINT FRANCIS HEALTH SYSTEM RETIREMENT PLANS ADMINISTRATIVE COMMITTEE,<br><br>      Defendants. | No. 26-CV-00213-CDL |

**<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND BRIEF IN SUPPORT</u>**

## TABLE OF CONTENTS

**Page**

MOTION TO DISMISS PLAINTIFF'S COMPLAINT ................................................................ 1

BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT .................... 1

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL ALLEGATIONS ............................................................................... 3

    A.    Saint Francis And The Plan ................................................................... 3

    B.    Plaintiff ................................................................................................. 6

    C.    Plaintiff's Claims ................................................................................. 6

III.    LEGAL STANDARDS ....................................................................................... 6

IV.    ARGUMENT ....................................................................................................... 7

    A.    Count I, Plaintiff's Claim For Breach Of The Duty Of Prudence, Fails .............. 7

        1.    Plaintiff's Claim Challenging The Fidelity Freedom TDFs Fails As A Matter Of Law Under *Matney* ................................................ 7

        2.    Plaintiff's Claim Challenging The Fidelity Contrafund Should Be Dismissed ........................................................................................ 10

            a.    Plaintiff Lacks Article III Standing To Challenge The Fidelity Contrafund ................................................................ 10

            b.    Plaintiff's Claim Challenging The Fidelity Contrafund's Share Class Fails As A Matter Of Law Under *Matney* ................ 13

        3.    The Court Should Dismiss Plaintiff's Claim Challenging The Dodge & Cox International Stock Fund ................................................. 14

            a.    Plaintiff Lacks Article III Standing To Challenge The Dodge & Cox International Stock Fund ..................................... 14

            b.    The Claim Challenging the Dodge & Cox International Stock Fund Fails Because That Fund Was Not Offered As A Plan Investment Option ............................................................. 14

    B.    Plaintiff Fails To State A Claim For Breach Of The Duty Of Loyalty ................ 15

    C.    Plaintiff's Derivative Co-Fiduciary Breach Claim Fails As A Matter Of Law ................................................................................................ 16

V.    CONCLUSION ................................................................................................... 17

APPENDIX ..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Wells Fargo & Co.*,
  967 F.3d 767 (8th Cir. 2020) ...............................................................................15, 16

*Antoine v. Marsh & McLennan Cos.*,
  2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023).........................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................6, 7

*Baker v. USD 229 Blue Valley*,
  979 F.3d 866 (10th Cir. 2020) .................................................................................6

*Basso v. Utah Power & Light Co.*,
  495 F.2d 906 (10th Cir. 1974) .................................................................................6

*Beldock v. Microsoft Corp.*,
  2023 WL 1798171 (W.D. Wash. Feb. 7, 2023).......................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007)..................................................................................................7

*Cunningham v. USI Ins. Servs., LLC*,
  2023 WL 8603123 (S.D.N.Y. Dec. 12, 2023) ........................................................15

*Davis v. Wash. Univ. in St. Louis*,
  960 F.3d 478 (8th Cir. 2020) .............................................................................5, 14

*Enstrom v. SAS Inst.*,
  2025 WL 685219 (E.D.N.C. Mar. 3, 2025) ............................................................13

*Fifth Third Bancorp. v. Dudenhoeffer*,
  573 U.S. 409 (2014)..............................................................................................2, 7

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999)................................................................................................11

*Hughes v. Nw. Univ.*,
  595 U.S. 170 (2022)............................................................................................7, 11

*Jones v. DISH Network Corp.* ("*Jones I*"),
  2023 WL 2706043 (D. Colo. Jan. 31, 2023)...........................................................12

*Jones v. DISH Network Corp.* ("*Jones II*"),
    2023 WL 2644081 (D. Colo. Mar. 27, 2023) .........................................................................12

*Leimkuehler v. Am. United Life Ins. Co.*,
    713 F.3d 905 (7th Cir. 2013) .....................................................................................5, 16

*Locascio v. Fluor Corp.*,
    2023 WL 320000 (N.D. Tex. Jan. 18, 2023) ....................................................................13, 15

*Matney v. Barrick Gold of N. Am., Inc.* ("*Matney I*"),
    2022 WL 1186532 (D. Utah Apr. 21, 2022)..............................................................8, 15, 16

*Matney v. Barrick Gold of N. Am.*,
    80 F.4th 1136 (10th Cir. 2023) ....................................................................... *passim*

*Matousek v. MidAm. Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) .........................................................................................4

*McWhorter v. Serv. Corp. Int'l*,
    748 F. Supp. 3d 459 (S.D. Tex. Sept. 11, 2024) ....................................................................13

*Partida v. Schenker Inc.*,
    2025 WL 948123 (N.D. Cal. Mar. 28, 2025)..............................................................................9

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ........................................................................11

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ..........................................................................................16

*Rosen v. Prudential Ret. Ins. & Ann. Co.*,
    718 F. App'x 3 (2d Cir. 2017) ......................................................................................16

*Sanders v. Grand River Dam Auth.*,
    2026 WL 916564 (N.D. Okla. Mar. 31, 2026) .........................................................................6

*Sandoval v. Novitex Enter. Sols. Emp. Benefits Comm.*,
    2018 WL 11393375 (D. Conn. Nov. 20, 2018) .........................................................................9

*Shields Law Grp. LLC v. Stueve Siegel Hanson LLP*,
    95 F.4th 1251 (10th Cir. 2024) .......................................................................................10

*Singh v. Deloitte LLP*,
    650 F. Supp. 3d 259 (S.D.N.Y. 2023)................................................................................11, 13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)...................................................................................................10

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020).................................................................................................10

*Tobias v. NVIDIA Corp.*,
    2021 WL 4148706 (N.D. Cal. Sept. 13, 2021) ..........................................................9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..................................................................................................10

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017)............................................................9

<u>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Saint Francis Health System, Inc. and Saint Francis Health System Retirement Plans Administrative Committee (together, "Saint Francis") respectfully move this Court to dismiss Plaintiff's Complaint (Dkt. 1) for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. In support of this motion, Saint Francis relies on the below Brief in Support of Motion to Dismiss Plaintiff's Complaint and accompanying exhibits.

<u>**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

**I.    INTRODUCTION**

Plaintiff Raminta Wilson ("Plaintiff") is a former participant in the Saint Francis Health System, Inc. 401(k) Savings Plan ("Plan"). In this lawsuit, Plaintiff alleges that Saint Francis breached its ERISA fiduciary duties by offering three specific investment options in the Plan: the Fidelity Freedom Target Date Funds ("Fidelity Freedom TDFs"), the Fidelity Contrafund, and the Dodge & Cox International Stock Fund. Plaintiff alleges that the Plan offered "higher cost" share classes of these funds when cheaper share classes of the same funds were available. The Tenth Circuit affirmed dismissal of substantively similar claims in *Matney v. Barrick Gold of North America*, 80 F.4th 1136, 1150 (10th Cir. 2023). Plaintiff's Complaint should meet the same fate.

Count I, Plaintiff's claim for breach of the fiduciary duty of prudence, fails with respect to each challenged fund. *First*, Plaintiff's challenge to the share class of the Fidelity Freedom TDFs fails to state claim under *Matney*. The plaintiff in *Matney* made the same share class allegations Plaintiff makes here. And, just like in *Matney*, judicially noticeable documents—the same documents considered in *Matney*—refute the Complaint's allegations.

Specifically, Plaintiff alleges the Plan offered the "more expensive" retail share class of the Fidelity Freedom TDFs instead of the "K6" share class. But the Plan's services agreement

1

shows that the Plan received a 35-basis point[1] revenue credit on the retail share class. Because of that credit, the retail share class was actually cheaper than the K6 share class. *Matney*, 80 F.4th at 1151 (where the challenged share class is "actually less expensive than" the share class preferred by the litigant, "*there can be no plausible inference of imprudence*" (emphasis added)). As such, Plaintiff's claims challenging the Fidelity Freedom TDFs fail as a matter of law. *Id.*

*Second*, Plaintiff's challenge to the Fidelity Contrafund's share class fails for two reasons. As a threshold issue, Plaintiff lacks Article III standing to challenge the Fidelity Contrafund because she does not allege she invested in that fund or paid the expense ratio she claims was imprudent. In other words, Plaintiff does not allege she has suffered an Article III injury in fact, causation, or redressability. Her claim challenging the Contrafund therefore fails for lack of constitutional standing. And, on the merits, this claim fails under *Matney*. Plaintiff alleges the Plan offered the retail share class of the Contrafund with an expense ratio of ~74 basis points instead of the K6 share class at ~45 basis points. This is a difference of 29 basis points. Yet the Plan's services agreement shows that Plan participants received a 35-basis point credit for the retail share class, which makes it cheaper than the allegedly prudent K6 share (74 - 35 = 39 for the retail share, which is less than 45 basis points for the K6 share). *Matney*, 80 F.4th at 1151. No imprudence can be inferred. *Id*.

*Third*, Plaintiff's challenge to the Dodge & Cox International Stock Fund share class likewise fails. Plaintiff claims that the Plan was invested in the Class I shares while the Class X shares were cheaper, according to the fund's prospectus. Once again, Plaintiff does not allege that she ever invested in the Dodge & Cox International Stock Fund. Nor does she allege that she paid the allegedly higher-cost expense ratio or was otherwise injured because of it. Accordingly, again,

---

[1] One basis point is one one-hundredth of a percent, or 0.01%. *Matney*, 80 F.4th at 1149 n.9.

Plaintiff lacks Article III standing. Plaintiff's claim also falls flat on the merits. Critically, the Plan's Form 5500—which the Court can consider under Rule 12(b)(6)—confirms that the Plan *did not offer* the Dodge & Cox *International* Stock Fund as an investment option to participants in any share class. In other words, Plan participants never invested in the Dodge & Cox International Stock Fund and never paid any fees for the Dodge & Cox International Stock Fund. Plaintiff's challenge to the Dodge & Cox International Stock Fund therefore fails as a matter of law.[2]

Counts II and III are derivative of Count I and fail for the same reasons. Count II merely repackages the faulty allegations in Count I as a duty of loyalty claim, and Plaintiff alleges no self-dealing. Her loyalty claim fails for the same reasons as her prudence claim. Meanwhile, Count III is a co-fiduciary liability claim also premised on the same underlying alleged fiduciary breaches, and fails to state a claim for the same reasons. *See Matney*, 80 F.4th at 1158-59 (affirming dismissal of derivative fiduciary duty to monitor claim).

For these reasons, and as set forth below, the Complaint should be dismissed.

## II.    FACTUAL ALLEGATIONS

### A.    Saint Francis And The Plan

Saint Francis is a not-for-profit health system based in Tulsa and the largest private employer in Eastern Oklahoma.[3] Saint Francis provides employees with a range of benefits, including the opportunity to save for retirement through the Plan. Compl. ¶ 15. The Plan is a defined contribution plan, which means that participants are responsible for selecting their own investments from the Plan's menu of options. *Id.* ¶¶ 18, 20. Among the Plan's investment options

---

[2] Before filing this lawsuit, Plaintiff's counsel requested and received certain documents about the Plan, including a Form 5500 (which is also publicly available) and participant fee disclosure, both of which show that the Plan did not offer the Dodge & Cox International Stock Fund.

[3] *See* About Saint Francis, https://www.saintfrancis.com/about-us (last accessed June 15, 2026).

are the Fidelity Freedom TDFs and the Fidelity Contrafund. Compl. ¶¶ 41, 64. The Plan's Form 5500s reflect that the Plan did not offer the Dodge & Cox *International* Stock Fund at any point during the putative class period. *See* Exhibits A-E (Form 5500 excerpts).[4]

As with all defined contribution plans, there are investment management expenses associated with the investment options. *See Matney*, 80 F.4th at 1142. Investment management expenses are expressed as an expense ratio, i.e., a percentage of the assets being managed, or in basis points. *Id.* at 1142, 1149 n.9; Compl. ¶ 31. A participant who invests $1,000 in a fund with an expense ratio of 0.50% (or 50 basis points), for instance, pays an annual fee of $5.00 ($1,000 x 0.0050). A participant who does not invest in a fund pays no fee associated with that fund.

Some of the Plan's mutual fund options are available in a specific share class. Compl. ¶ 22. "'[E]ach share class within a given fund is invested in an identical portfolio of securities' but 'the classes have differing price structures.'" *Matney*, 80 F.4th at 1149 n.8 (citation omitted). In other words, when a fund has more than one share class, the share classes charge different expense ratios. Some funds have "retail" and "institutional" share classes. Compl. ¶¶ 22-23.

The Complaint alleges that the Plan offered the Fidelity Freedom TDFs in the retail share class but should have offered the institutional K6 share class instead. Compl. ¶ 54. According to the Complaint, the K6 share class is between 10 basis points and 30 basis points cheaper than the retail share class, depending on the year and the particular vintage. *Id.*[5]

---

[4] All exhibits are attached to the Declaration of Joshua M. Adler, filed with this Motion. The Court may consider the Plan's Form 5500s when deciding this Motion because they are public records and cited in Complaint paragraph 74. *See Matney*, 80 F.4th at 1151 (considering plan's Form 5500 in affirming Rule 12(b)(6) dismissal); *Matousek v. MidAm. Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022) (same).

[5] The name of each fund in a target date series (a "vintage") typically includes a year, often spaced in five-year intervals, representing a "target date" near the investor's retirement. Compl. ¶ 54 n.6. For example, the Fidelity Freedom 2060 fund is designed for someone planning to retire around the year 2060. *See id.*

The Complaint alleges that the Plan offered the Fidelity Contrafund, an actively managed equity fund, in the retail share class but should have offered the K6 share class instead. Compl. ¶ 64.[6] According to the Complaint, the retail share class had an expense ratio of ~74 basis points, and the K6 share class had an expense ratio of ~45 basis points. Compl. ¶ 64.

Fidelity is the Plan's recordkeeper, and Plaintiff complains that the Plan uses revenue sharing. *Id*. ¶¶ 31, 74; *see also* Exhibit F (Fidelity Main Services Agreement).[7] Under the Fidelity services agreement, actively managed Fidelity equity mutual funds and Fidelity Freedom TDFs each receive a 35-basis point revenue credit. The agreement provides that:

> Fidelity shall fund a Participant Revenue Credit for each quarter calculated as the sum of the following:
>
> A. Credits attributable to Fidelity investment products:
>
> Average daily balances held in the Plan of Fidelity investment products multiplied by one-quarter (1/4) of the following rates respectively:
>
> (i) Actively managed (non Class K) Fidelity equity Mutual Funds: 35 basis points per annum;
>
> (ii) Actively managed (non Class K) Fidelity Freedom® Funds: 35 basis points per annum….

Exhibit F; *see also Matney*, 80 F.4th at 1151 & n.12 (describing similar credits).

---

[6] *See Actively Managed Funds*, Fidelity, https://www.fidelity.com/mutual-funds/investing-ideas/beat-the-benchmark (last accessed June 15, 2026) (identifying the Contrafund as an actively managed fund); *Fidelity Contrafund, Commentary, Portfolio Manager Q&A*, Fidelity, https://institutional.fidelity.com/app/fund/item/details/FIIS_DF_490.html (last accessed June 15, 2026) (noting in manager biography that the Contrafund was the "largest solely managed active mutual fund in the world" until April 2025); *see also Matney*, 80 F.4th at 1154 & n.14 (considering fund prospectus on motion to dismiss); *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 & n.3 (8th Cir. 2020) (same).

[7] Revenue sharing is one way to pay for recordkeeping and administrative services that every retirement plan requires. *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 908 (7th Cir. 2013); *Matney*, 80 F.4th at 1151 n.12.

### B.    Plaintiff

Plaintiff was a participant in the Plan, although she does not allege when she participated in the Plan. Compl. ¶ 9. Similarly, Plaintiff alleges that she invested in the Fidelity Freedom TDFs, but not the time period in which she invested. *Id.* ¶ 10. Plaintiff does not allege that she was ever invested in the Fidelity Contrafund or the Dodge & Cox International Stock Fund. *See generally* Compl.

### C.    Plaintiff's Claims

In Count I, Plaintiff alleges that Saint Francis breached ERISA's fiduciary duty of prudence by including in the Plan so-called "more expensive" share classes for three investment options: the Fidelity Freedom TDFs, the Fidelity Contrafund, and the Dodge & Cox International Stock Fund. Compl. ¶¶ 40-71, 104-112. In Count II, Plaintiff alleges that Saint Francis breached ERISA's duty of loyalty by offering those "more expensive" share classes. *Id.* ¶¶ 72-82, 113-24. In Count III, Plaintiff alleges that each Defendant breached its respective co-fiduciary duties under ERISA in connection with the same investment share classes. *Id.* ¶¶ 125-131.

## III.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim if it lacks subject matter jurisdiction. Motions to dismiss for lack of standing are properly brought under Rule 12(b)(1) because Article III standing is a jurisdictional issue. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871-72 (10th Cir. 2020). "The party asserting subject matter jurisdiction 'bears the burden of proof.'" *Sanders v. Grand River Dam Auth.*, 2026 WL 916564, at *2 (N.D. Okla. Mar. 31, 2026) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

6

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)); *see also Matney*, 80 F.4th at 1144 ("the familiar Rule 12(b)(6) pleading standard applies to breach of fiduciary duty claims under ERISA"). This is a "two-pronged approach." *Iqbal*, 556 U.S. at 679. First, the Court must disregard allegations that are not well-pleaded facts, including "legal conclusions," mere "labels," "conclusory statements," and "naked assertions devoid of further factual enhancement." *Id.* at 678-79 (cleaned up). Then, the Court must assess whether "well-pleaded factual allegations" remain that "allow[] the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This requires "direct or inferential allegations respecting all the material elements necessary to sustain" the claims asserted against each defendant. *Twombly*, 550 U.S. at 562.

In the ERISA context, Rule 12(b)(6) is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). The appropriate analysis entails "careful, context-sensitive scrutiny of a complaint's allegations" to determine whether it states a claim that is plausible, *id.*, giving "due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

## IV.    ARGUMENT

### A.    Count I, Plaintiff's Claim For Breach Of The Duty Of Prudence, Fails

#### 1.    Plaintiff's Claim Challenging The Fidelity Freedom TDFs Fails As A Matter Of Law Under *Matney*

Plaintiff contends that Saint Francis breached its fiduciary duty by offering the Fidelity Freedom TDFs in the purportedly "higher cost" retail share class rather than the "lower cost" K6 share class. Compl. ¶¶ 40-63. This claim fails under the Tenth Circuit's decision in *Matney*, which is squarely on point.

Like here, in *Matney*, the plaintiffs alleged that the defendants breached their fiduciary duties by offering target date funds in a "higher fee" retail share class (the "R5") rather than a "lower fee" share class (the "R6"). *Matney*, 80 F.4th at 1149-50. The Tenth Circuit observed that the "complaint alleged the R5 funds were more expensive because they had expense ratios roughly ten basis points higher than the cheaper R6 funds." *Id.* at 1149. "Based on this cost comparison, [the plaintiff] claimed the [defendant]'s 'failure to select the R6 share class was an indication of its failure to prudently monitor the Plan to determine whether the Plan was invested in the lowest-cost share class available for the Plan's mutual funds.'" *Id.* (citation omitted).

In seeking dismissal of the complaint, the defendant in *Matney* submitted the plan's service agreement with Fidelity, which demonstrated that the R5 share class received a "revenue credit" of 0.15%. *Matney*, 80 F.4th at 1150-51. "This means the R5 funds were essentially discounted by 0.15%." *Id.* Because this discount undermined the plaintiff's share class cost comparison, the district court dismissed the plaintiff's claim, and the Tenth Circuit affirmed. The Tenth Circuit explained: "That the R5 funds are actually less expensive than the R6 funds is significant" because "there can be no plausible inference of imprudence" where "the Plan has not actually offered a more costly fund." *Id.* at 1151.

*Matney* compels dismissal of Plaintiff's challenge to the Fidelity Freedom TDFs for the same reasons. The Plan's services agreement expressly provides that participants who invested in the retail version of the Fidelity Freedom TDFs receive a revenue credit of 35 basis points (or 0.35%). *See* Exhibit F at p. 25; Exhibit G at p. 3.[8] This means the retail share class was "essentially

---

[8] The Court may properly consider the Fidelity services agreement when deciding this Motion because it is central to Plaintiff's claims and substantively identical to the Fidelity agreement considered by the District of Utah and Tenth Circuit in *Matney*. *Matney*, 80 F.4th at 1151; *Matney v. Barrick Gold of N. Am., Inc.*, 2022 WL 1186532, at \*7 (D. Utah Apr. 21, 2022) ("*Matney I*"); *see also* Mot. to Dismiss Pls.' Am. Compl., Exhibit 4 (Dkt. 24-4) at 111-12, *Matney v. Barrick*

discounted" by 0.35%, or 35 basis points. *Matney*, 80 F.4th at 1151. Accounting for that revenue credit, the allegedly "more expensive" retail share class actually cost less than the K6 share class Plaintiff contends should have been offered instead.

For instance, Plaintiff alleges that in 2020, the Plan offered the Fidelity Freedom 2045 fund retail share class with an expense ratio of 75 basis points (0.75%). Compl. ¶ 54. Accounting for the 35-basis point revenue credit, however, the *actual* cost to Plan participants was 40 basis points (0.75% - 0.35% = 0.40%). The actual fee was ten basis points *less* than the K6 expense ratio Plaintiff alleges (0.50%). *Id.* This principle holds true for each Fidelity Freedom TDF in each year identified in the Complaint. *See* Appendix.

At bottom, Plaintiff alleges that the K6 share classes were between 10 basis points and 30 basis points cheaper than the retail share classes. Compl. ¶ 54. But after accounting for the revenue credit, the retail share classes were actually "less expensive" than the K6 shares by between 5 and 25 basis points. *Matney*, 80 F.4th at 1151. As the Tenth Circuit concluded in *Matney*, this "is significant," and means that "there can be no plausible inference of imprudence." *Id.*[9]

Plaintiff's claim challenging the Fidelity Freedom TDFs should be dismissed.

---

*Gold of N. Am., Inc.*, No. 2:20-cv-00275-TC (D. Utah Aug. 3, 2020) (fee schedule for services agreement with Fidelity); *Sandoval v. Novitex Enter. Sols. Emp. Benefits Comm.*, 2018 WL 11393375, at *5-6 (D. Conn. Nov. 20, 2018) (considering services agreement attached to Rule 12(b)(6) motion because it was "integral" to fiduciary-breach claim based on excessive fees). Further, Saint Francis produced the operative services agreement to Plaintiff in response to a pre-litigation document request, so Plaintiff had it when preparing the Complaint. *See supra* n.2.

[9] Other courts have rejected share class claims in analogous contexts, including where revenue sharing renders the actual cost of the retail share class lower than the other purportedly "lower-cost" share class. *See, e.g.*, *White v. Chevron Corp.*, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018); *Partida v. Schenker Inc.*, 2025 WL 948123, at *3 (N.D. Cal. Mar. 28, 2025) (dismissing duty of prudence claim where alleged higher-cost share classes were actually less expensive due to revenue sharing); *Tobias v. NVIDIA Corp.*, 2021 WL 4148706, at *11 (N.D. Cal. Sept. 13, 2021) (same and observing that higher-cost shares offered revenue sharing, which was an "obvious alternative explanation for why the [p]lan did not offer the lowest-cost share class for those funds").

### 2. Plaintiff's Claim Challenging The Fidelity Contrafund Should Be Dismissed

#### a. Plaintiff Lacks Article III Standing To Challenge The Fidelity Contrafund

The Court should dismiss Plaintiff's claims challenging the Fidelity Contrafund pursuant to Rule 12(b)(1) for lack of Article III standing. Plaintiff does not allege that she invested in this fund or paid the allegedly higher fees, so she has not suffered an injury in fact caused by the Fidelity Contrafund for which there is a redressable remedy.

Standing is a "threshold jurisdictional question" in every case, including those involving ERISA claims. *Shields Law Grp. LLC v. Stueve Siegel Hanson LLP*, 95 F.4th 1251, 1279 (10th Cir. 2024) (citation omitted); *see also Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020) ("There is no ERISA exception to Article III."). To establish standing, a plaintiff must demonstrate that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The "injury" element requires a plaintiff to show that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (citation omitted).

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing Article III standing and, at the pleading stage, "must clearly allege facts demonstrating each element." *Id.* at 338. In putative class actions like this, the named plaintiff-representatives "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at 338 n.6 (citation omitted). And "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Here, Plaintiff claims that the Plan offered the Fidelity Contrafund in the more costly retail share class when a cheaper K6 share class was available. Compl. ¶¶ 64-65. But Plaintiff does not allege that she personally invested in the Fidelity Contrafund or paid *any* fees for that fund.[10] Nor does she allege that the fees associated with the Contrafund were charged to all Plan participants, alleging only that those participants who invested in the Contrafund paid its fees. Compl. ¶ 31. That is because the expense ratio (what the Complaint refers to as "ER," *id.*) is "calculated as a percentage of the assets the plan participant *chooses to invest in the fund*." *Hughes*, 595 U.S. at 174 (emphasis added). As the Complaint explains, "these expenses are deducted *from the fund's investment return*" and "reflected in *net investment performance*." Compl. ¶ 31 (emphasis added). Here, however, Plaintiff did not "choose to invest in the fund." *Hughes*, 595 U.S. at 174. She paid no fee associated with the Fidelity Contrafund, and her investment performance and investment return were not impacted *at all* by the Contrafund's fee. Mathematically, that would be expressed as $0 assets x 0.74% ER = zero fee. Zero fee means no injury, no causation and no redressability.

A 401(k) plan participant's benefits are determined by the investments held in her individual account. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). Accordingly, where a participant "does not invest [her] plan assets into a particular fund offered in a defined-contribution plan," she "will not have [her] individual plan benefit affected in any way by that fund's … fees." *Singh v. Deloitte LLP*, 650 F. Supp. 3d 259, 265 (S.D.N.Y. 2023). Put differently, because Plaintiff has not alleged that she invested in the Fidelity Contrafund, she has not pleaded a personal injury resulting from the allegedly higher fees. *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019) ("Losses incurred by funds in which Plaintiffs did not

---

[10] *Cf.* Compl. ¶¶ 10-12 (alleging only that Plaintiff invested in two vintages of the Fidelity Freedom TDFs).

11

invest cannot have impaired the value of Plaintiffs' individual accounts" so "Plaintiffs have not been injured as to those funds."). Without that jurisdictional basis, Plaintiff's claims challenging the Fidelity Contrafund should be dismissed for lack of Article III standing.

A decision from the District of Colorado is instructive. *Jones v. DISH Network Corp.*, 2023 WL 2706043, at *8 (D. Colo. Jan. 31, 2023) ("*Jones I*"), *R & R adopted*, 2023 WL 2644081, at *4-5 (D. Colo. Mar. 27, 2023) ("*Jones II*"). In *Jones*, like here, the plaintiffs asserted ERISA fiduciary breach claims related to the Fidelity Freedom funds and another fund (the Royce Total Return Fund) offered in their employer's 401(k) plan. *Jones I*, 2023 WL 2796943, at *2-3. Despite never investing in the Royce fund, the plaintiffs argued they had constitutional standing to challenge its fees and performance because they invested in the Fidelity Freedom funds and challenged the defendants' general investment oversight process. *Jones II*, 2023 WL 2644081 at *4. The District of Colorado rejected that argument. *Id.* at *4. Because the plaintiffs did not invest in the Royce fund, they had not suffered a "cognizable injury to their personal accounts." *Jones I*, 2023 WL 2796943, at *8. The court therefore dismissed the claim challenging the Royce fund for lack of Article III standing. *Jones II*, 2023 WL 2644081 at *4.

The same reasoning applies here. Plaintiff did not pay the fee associated with the Contrafund's share class that is the subject of her Complaint because she never invested in that fund. As such, she personally suffered no Article III injury caused by offering that fund as an investment option in the Plan. And even if she were to prevail on her challenge to the Contrafund, her personal benefits would remain exactly the same. Thus, she cannot establish an Article III injury in fact, causation, or redressability. *Jones*, 2023 WL 2644081, at *4; *see also Antoine v. Marsh & McLennan Cos.*, 2023 WL 6386005, at *8 (S.D.N.Y. Sept. 30, 2023) (the plaintiff's investment in target date funds did not confer standing to challenge a wholly different fund in

12

which the plaintiff never invested).[11] The Court should dismiss Plaintiff's claim challenging the Fidelity Contrafund for lack of constitutional standing.

### b. Plaintiff's Claim Challenging The Fidelity Contrafund's Share Class Fails As A Matter Of Law Under *Matney*

Plaintiff's claim challenging the Plan's inclusion of the Contrafund's "more expensive" retail share class instead of the "less expensive" K6 share class also fails to state a claim under Rule 12(b)(6).

Plaintiff alleges that the Contrafund retail share class had an expense ratio of ~74 basis points, and that a cheaper K6 share class was available with an expense ratio of ~45 basis points. Compl. ¶ 64. But again, Plaintiff ignores the Fidelity services agreement, which provides a revenue credit of 35 basis points for the retail share class of the Fidelity Contrafund. *See supra* at p. 5. Following *Matney* and accounting for that revenue credit means that the retail share class cost only 39 basis points (74 - 35 = 39), which is less than 45 basis points. As in *Matney*, the retail share class is "actually less expensive" than the K6 share class, which precludes an inference of imprudence. 80 F.4th at 1151.

Plaintiff's challenge to the Fidelity Contrafund share class fails as matter of law.

---

[11] *See also, e.g.*, *McWhorter v. Serv. Corp. Int'l*, 748 F. Supp. 3d 459, 470 (S.D. Tex. Sept. 11, 2024) (plaintiff only had standing to raise share class claim "with respect to the two funds in which she invested"); *Singh*, 650 F. Supp. 3d at 265 (plaintiffs lacked standing to challenge "excessively high" investment management fees of four funds out of six challenged funds because they did not invest in them); *Locascio v. Fluor Corp.*, 2023 WL 320000, at *3 (N.D. Tex. Jan. 18, 2023) (plaintiff only had standing for "claims involving the three Plan options in which he invested"); *Enstrom v. SAS Inst.*, 2025 WL 685219, at *6 (E.D.N.C. Mar. 3, 2025) (similar); *Beldock v. Microsoft Corp.*, 2023 WL 1798171, *4 (W.D. Wash. Feb. 7, 2023) (plaintiff who did not invest in challenged TDFs did not have Article III standing).

13

3.     **The Court Should Dismiss Plaintiff's Claim Challenging The Dodge &
Cox International Stock Fund**

a.     **Plaintiff Lacks Article III Standing To Challenge The Dodge &
Cox International Stock Fund**

Plaintiff alleges Saint Francis imprudently offered the "I" share class of the Dodge & Cox
International Stock Fund in the Plan. Compl. ¶ 64. Plaintiff lacks Article III standing for this claim,
too, because she does not allege she invested in this fund. For the reasons explained above
regarding the Fidelity Contrafund, Plaintiff has neither suffered an actual and concrete injury in
fact nor alleged facts establishing causation and redressability. *See supra* at pp. 10-13.
Accordingly, Plaintiff's challenge to the Dodge & Cox International Stock Fund fails for lack of
Article III standing.

b.     **The Claim Challenging the Dodge & Cox International Stock
Fund Fails Because That Fund Was Not Offered As A Plan
Investment Option**

There is more. The Plan did not even offer the Dodge & Cox International Stock Fund—
in any share class—as an investment option for participants.

The Plan's Form 5500s confirm that the Dodge & Cox International Stock Fund was not
part of the Plan's investment menu at any point during the putative class period. *See* Exs. A-E.[12]
It is not surprising, therefore, that Plaintiff does not allege any *facts* about when the Plan offered
the Dodge & Cox International Stock Fund as an investment option or how much the Plan was

---

[12] The Complaint specifically refers to the Plan's Form 5500s, Compl. ¶ 74, and the Court can
consider the Form 5500s in the Rule 12(b)(6) context regardless. *Matney*, 80 F.4th at 1151
(considering plan's Form 5500 when affirming Rule 12(b)(6) dismissal); *see also supra* n.4. Again,
Plaintiff knows that the Plan did not include this fund because the information was provided to her
in response to her pre-litigation request for documents. The 2025 Dodge & Cox prospectus (cited
at Compl. ¶ 65 n.9) shows that the Dodge & Cox *International* Stock Fund is different from the
Dodge & Cox Stock Fund. *See* Exhibit H; *see also Matney*, 80 F.4th at 1154 & n.14; *Davis*, 960
F.3d at 484 & n.3.

invested in it. Instead, the Complaint only mentions the Dodge & Cox International Stock Fund twice, in paragraphs 64 and 65. That is not enough to plausibly state a claim, particularly when the Form 5500s confirm that the Dodge & Cox International Stock Fund was never in the Plan during the putative class period that is the subject of Plaintiff's lawsuit. *Matney*, 80 F.4th at 1151 (finding that the district court did not err in refusing to accept as true factual allegations contradicted by similar documents). Plaintiff's challenge to the Dodge & Cox International Stock Fund fails to state a plausible claim.

For all of these reasons, Count I should be dismissed.

**B.     Plaintiff Fails To State A Claim For Breach Of The Duty Of Loyalty**

In Count II, Plaintiff alleges that Saint Francis breached ERISA's duty of loyalty by offering the challenged share classes. Compl. ¶¶ 72-82, 113-24. This count simply repackages the same flawed prudence allegations as disloyal conduct. *See, e.g.*, *id.* ¶ 72 (alleging Saint Francis's "share class selections" were "not only imprudent" but also "disloyal[]"); *id.* ¶ 73 (alleging the "increased cost" of share classes was "neither prudent nor loyal"); *id.* ¶ 120 (alleging Saint Francis breached the duty of loyalty "by allowing higher cost share classes" and "unnecessary costs"). Yet "[t]he duties of prudence and loyalty are distinct." *Matney I*, 2022 WL 1186532, at *13. That is why courts routinely dismiss recycled allegations such as these. *Id.* (dismissing disloyalty claim where plaintiffs "rel[ied] on the same set of allegations to support each theory of liability, yet the allegations almost exclusively concern issues of prudence"); *Allen v. Wells Fargo & Co.*, 967 F.3d 767, 777 (8th Cir. 2020) (similar); *Locascio*, 2023 WL 320000, at *6 (similar); *Cunningham v. USI Ins. Servs., LLC*, 2023 WL 8603123, at *7 (S.D.N.Y. Dec. 12, 2023) (similar). Because Plaintiff "conflate[s]" her "duty of prudence claim with her duty of loyalty claim," Count II should be dismissed. *Matney I*, 2022 WL 1186532, at *13-14.

15

Boiled down, Count II is merely a blanket attack on the practice of revenue sharing. *See* Compl. ¶ 75 (alleging that "revenue sharing is tied to higher-cost share classes"), 118, 121. This cannot state a claim because revenue sharing "has been commonplace for years." *Leimkuehler*, 713 F.3d at 908; *see also Matney I*, 2022 WL 1186532, at \*12, \*14 (holding that the complaint's allegations, including about the defendant's revenue sharing arrangement with Fidelity, failed to state a plausible duty of loyalty claim); *Rosen v. Prudential Ret. Ins. & Ann. Co.*, 718 F. App'x 3, 6 (2d Cir. 2017) ("Fee-sharing arrangements between service providers and third party managers 'do not in-and-of-themselves create a violation' of ERISA." (citation omitted)). There is no reason to reach a different conclusion here. Count II warrants dismissal.

### C.      Plaintiff's Derivative Co-Fiduciary Breach Claim Fails As A Matter Of Law

In Count III, Plaintiff alleges that each Defendant breached its respective co-fiduciary duties under ERISA. Compl. ¶¶ 125-31; *see* 29 U.S.C. § 1105(a) (setting forth circumstances when a plan fiduciary can be held liable for a breach committed by another plan fiduciary). This derivative claim falls along with Plaintiff's flawed fiduciary-breach claims in Counts I and II. *See, e.g.*, *Matney*, 80 F.4th at 1159 ("[B]ecause we affirm the district court's dismissal of Mr. Matney's duty of prudence claim, we also affirm the district court's decision to dismiss the duty to monitor claim."); *Allen*, 967 F.3d at 777 (affirming dismissal of "derivative" co-fiduciary breach claim where district court properly dismissed underlying claims for breach of fiduciary duties); *Pugh v. Tribune Co.*, 521 F.3d 686, 702 (7th Cir. 2008) (same). Moreover, the co-fiduciary breach allegations in the Complaint merely parrot the statutory language and assert legal conclusions. *Matney*, 80 F.4th at 1144 (a court "need not accept '[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements'" (citation omitted) (alterations in original)). Count III cannot withstand dismissal.

16

## V.     CONCLUSION

The Court should dismiss Plaintiff's Complaint in its entirety.

Dated: June 15, 2026

Respectfully submitted,

*/s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Telephone:   (215) 963-5000
Facsimile:   (215) 963-5001
jeremy.blumenfeld@morganlewis.com

Abbey M. Glenn (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone:   (202) 739-3000
Facsimile:   (202) 739-3001
abbey.glenn@morganlewis.com

Joshua M. Adler (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1 Federal Street
Boston, MA 02116
Telephone:   (617) 341-7700
Facsimile:   (617) 341-7701
joshua.adler@morganlewis.com

Steve Broussard
**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**
521 East 2nd Street, Suite 1200
Tulsa, OK 74120-1855
Telephone:    (918) 594-0400
Facsimile:    (918) 594-0505
sbroussard@hallestill.com

*ATTORNEYS FOR DEFENDANTS*

## APPENDIX

| Fidelity Freedom Retirement | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.47% | 0.47% | 0.47% | 0.47% | 0.47% | 0.47% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.12%** | **0.12%** | **0.12%** | **0.12%** | **0.12%** | **0.12%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.37% | 0.37% | 0.37% | 0.37% | 0.24% | 0.24% |
| Difference Between Actual Cost and K6 | -0.25% | -0.25% | -0.25% | -0.25% | -0.12% | -0.12% |

| Fidelity Freedom 2010 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.52% | 0.51% | 0.50% | 0.49% | 0.48% | 0.48% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.17%** | **0.16%** | **0.15%** | **0.14%** | **0.13%** | **0.13%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.39% | 0.39% | 0.38% | 0.38% | 0.25% | 0.25% |
| Difference Between Actual Cost and K6 | -0.22% | -0.23% | -0.23% | -0.24% | -0.12% | -0.12% |

| Fidelity Freedom 2015 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.56% | 0.55% | 0.54% | 0.54% | 0.53% | 0.52% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.21%** | **0.20%** | **0.19%** | **0.19%** | **0.18%** | **0.17%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.41% | 0.41% | 0.40% | 0.40% | 0.27% | 0.26% |
| Difference Between Actual Cost and K6 | -0.20% | -0.21% | -0.21% | -0.21% | -0.09% | -0.09% |

| Fidelity Freedom 2020 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.60% | 0.60% | 0.59% | 0.58% | 0.57% | 0.56% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.25%** | **0.25%** | **0.24%** | **0.23%** | **0.22%** | **0.21%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.43% | 0.43% | 0.42% | 0.42% | 0.30% | 0.29% |
| Difference Between Actual Cost and K6 | -0.18% | -0.18% | -0.18% | -0.19% | -0.08% | -0.08% |

| Fidelity Freedom 2025 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.65% | 0.65% | 0.63% | 0.62% | 0.61% | 0.61% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.30%** | **0.30%** | **0.28%** | **0.27%** | **0.26%** | **0.26%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.45% | 0.45% | 0.44% | 0.44% | 0.34% | 0.33% |
| Difference Between Actual Cost and K6 | -0.15% | -0.15% | -0.16% | -0.17% | -0.08% | -0.07% |

| Fidelity Freedom 2030 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.69% | 0.68% | 0.67% | 0.66% | 0.66% | 0.65% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.34%** | **0.33%** | **0.32%** | **0.31%** | **0.31%** | **0.30%** |

| K6 Expense Ratio (Compl. ¶ 55) | 0.47% | 0.47% | 0.46% | 0.46% | 0.37% | 0.36% |
| Difference Between Actual Cost and K6 | -0.13% | -0.14% | -0.14% | -0.15% | -0.06% | -0.06% |

| Fidelity Freedom 2035 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.73% | 0.72% | 0.72% | 0.71% | 0.70% | 0.69% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.38%** | **0.37%** | **0.37%** | **0.36%** | **0.35%** | **0.34%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.49% | 0.49% | 0.48% | 0.48% | 0.41% | 0.40% |
| Difference Between Actual Cost and K6 | -0.11% | -0.12% | -0.11% | -0.12% | -0.06% | -0.06% |

| Fidelity Freedom 2040 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.75% | 0.75% | 0.75% | 0.75% | 0.74% | 0.73% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.39%** | **0.38%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.50% | 0.50% | 0.50% | 0.50% | 0.44% | 0.45% |
| Difference Between Actual Cost and K6 | -0.10% | -0.10% | -0.10% | -0.10% | -0.05% | -0.07% |

| Fidelity Freedom 2045 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.75% | 0.75% | 0.75% | 0.75% | 0.75% | 0.75% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.40%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.50% | 0.50% | 0.50% | 0.50% | 0.45% | 0.46% |
| Difference Between Actual Cost and K6 | -0.10% | -0.10% | -0.10% | -0.10% | -0.05% | -0.06% |

| Fidelity Freedom 2050 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.75% | 0.75% | 0.75% | 0.75% | 0.75% | 0.75% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.40%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.50% | 0.50% | 0.50% | 0.50% | 0.45% | 0.46% |
| Difference Between Actual Cost and K6 | -0.10% | -0.10% | -0.10% | -0.10% | -0.05% | -0.06% |

| Fidelity Freedom 2055 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.75% | 0.75% | 0.75% | 0.75% | 0.75% | 0.75% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.40%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.50% | 0.50% | 0.50% | 0.50% | 0.45% | 0.46% |
| Difference Between Actual Cost and K6 | -0.10% | -0.10% | -0.10% | -0.10% | -0.05% | -0.06% |

| Fidelity Freedom 2060 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.75% | 0.75% | 0.75% | 0.75% | 0.75% | 0.75% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |

19

| | | | | | | |
|---|---|---|---|---|---|---|
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.40%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.50% | 0.50% | 0.50% | 0.50% | 0.45% | 0.46% |
| Difference Between Actual Cost and K6 | -0.10% | -0.10% | -0.10% | -0.10% | -0.05% | -0.06% |

| **Fidelity Freedom 2065** | **2020** | **2021** | **2022** | **2023** | **2024** | **2025** |
|---|---|---|---|---|---|---|
| Alleged Retail Expense Ratio (Compl. ¶ 55) | 0.75% | 0.75% | 0.75% | 0.75% | 0.75% | 0.75% |
| Credit in Service Agreement | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% | 0.35% |
| **Actual Retail Expense Ratio (Alleged - Credit)** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.40%** | **0.40%** |
| K6 Expense Ratio (Compl. ¶ 55) | 0.50% | 0.50% | 0.50% | 0.50% | 0.45% | 0.46% |
| Difference Between Actual Cost and K6 | -0.10% | -0.10% | -0.10% | -0.10% | -0.05% | -0.06% |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2026, I electronically transmitted the attached document

to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic

Filing to the Following ECF Registrants:

William B. Federman                      Abigail Marie Cody
Alex J. Ephraim                          Milberg PLLC
FEDERMAN & SHERWOOD                       800 S. Gay Street, Suite 1100
10205 N. Pennsylvania Avenue             Knoxville, Tennessee 37929
Oklahoma City, Oklahoma 73120


                                         /s/ *Jeremy P. Blumenfeld*
                                         Jeremy P. Blumenfeld